Michael S. Fischman (MF 7245)
mfischman@phillipsnizer.com
Jeremy D. Richardson (JR 7706)
jrichardson@phillipsnizer.com
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

BLOODROSE ENTERPRISES, INC.

                               Plaintiff,

-against-

CONVERSE, INC., KINWAY INDUSTRIES
(U.S.A.) LTD., and CORBIS CORPORATION,

                              Defendants.

-------------------------------------------------------------x

**ECF CASE**

Docket No. 07 CV 6445 GBD (HP)

**FIRST AMENDED COMPLAINT
and JURY DEMAND**

Bloodrose Enterprises, Inc. ("Bloodrose"), by its attorneys, Phillips Nizer LLP, for its complaint against defendants Converse, Inc. ("Converse"), Kinway Industries (U.S.A.) LTD. ("Kinway"), and Corbis Corporation ("Corbis") alleges as follows:

**JURISDICTION AND VENUE**

1.      This is an action for: (i) copyright infringement arising under the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"); and (ii) Unfair Competition under New York common law.

2.      This Court has jurisdiction of this action for defendants' copyright infringement under 28 U.S.C. §§ 1331, and 1338(a).

1014328.1

3. This Court has jurisdiction of this action for defendants' Unfair Competition pursuant to 28 U.S.C. § 1338(b) and on the basis of supplemental jurisdiction.

4. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(a). Process properly issues from this Court pursuant to Rule 4 of the Federal Rules of Civil Procedure.

## THE PARTIES

5. Bloodrose is a corporation duly organized and existing under the laws of the State of New York with its principal place of business at 2297 Middle Country Road, Suite C, Centereach, New York 11720.

6. Bloodrose is a designer of original, highly stylized and individually designed tattoos. Bloodrose operates a custom tattoo studio for "by appointment only" clients.

7. Converse is, upon information and belief, a corporation duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business at One High Street, North Andover, Massachusetts.

8. Upon information and belief Converse manufactures, imports, and/or distributes, among other things, footwear.

9. Upon information and belief Converse has sold in the United States, within this district, and outside the United States footwear which infringes a copyrighted design owned by Bloodrose as set forth hereinafter.

10. Upon information and belief footwear sold by Converse has come into the stream of commerce within the State of New York and specifically within this district.

11. Upon information and belief Converse transacts business within this district, derives substantial revenue from intrastate and interstate commerce, and has sold footwear which infringes Bloodrose's copyrighted design within this district and also without this district having

1014328.1

injurious consequences to Bloodrose, and Converse is otherwise within the jurisdiction of this Court.

12. Kinway is, upon information and belief, a corporation duly organized under the laws of the State of New York with a principal place of business at 5 West 8th Street, New York, New York.

13. Upon information and belief Kinway is in the business of selling, among other things, footwear. It operates a retail store and a retail (e-commerce) web site and transacts business within this district, derives substantial revenue from intrastate and interstate commerce.

14. Upon information and belief Kinway has sold footwear which infringes Bloodrose's copyrighted design within this district and also without this district having injurious consequences to Bloodrose, and Kinway is otherwise within the jurisdiction of this Court.

15. Corbis is, upon information and belief, a corporation duly organized under the laws of the State of Washington with a principal place of business at 710 Second Avenue, Suite 200, Seattle, Washington.

16. Upon information and belief Corbis is in the business of commercially exploiting by selling, licensing, and otherwise distributing photographic images and artwork.

## FACTS COMMON TO ALL CLAIMS

17. Bloodrose is, and has been, prominent in the creation and application of original, highly stylized and individually designed tattoos for its "by appointment only" clients. Bloodrose has operated its private client tattoo studio since 2004.

18. Bloodrose's tattoos are exclusively one-of-a-kind designs for a single client and are usually large scale tattoos. Thus, it is important to Bloodrose's clients, and crucial to Bloodrose's business in achieving customer loyalty and recommendations, that Bloodrose's designs not be copied or used by anyone other than Bloodrose.

1014328.1

19. In or about May 2002 Bloodrose created an original work of art for use as a tattoo which Bloodrose named ***Bishamonten Back*** (the "Tattoo"). Bloodrose used the Tattoo exclusively for one of its clients. A photocopy of the full view and a close up view of the Tattoo and is attached hereto as Exhibit A.

20. Bloodrose first "published" (as that term is defined by the Copyright Act) the Tattoo in or about May 2002.

21. Bloodrose registered the Tattoo with the U.S. Copyright Office under Registration Number VA 1-401-596. A photocopy of the registration certificate for the Tattoo is attached hereto as Exhibit B.

22. The Tattoo is original and copyrightable under the Copyright Laws of the United States, 17 U.S.C. § 101, *et seq*.

23. Bloodrose has fully complied in all respects with the provisions of the Copyright Act with respect to the Tattoo.

24. At all times since it created the Tattoo, Bloodrose has been, and still is, the exclusive holder of all rights, title and interest in and to the copyright therein.

25. Upon information and belief at some time after May 2002 an individual photographed the Tattoo without Bloodrose's permission.

26. The photograph of the Tattoo (the "Photograph") was not authorized by Bloodrose.

27. Upon information and belief at some time after May 2002 the individual who took the unauthorized photograph of the Tattoo sold, licensed, or otherwise transferred the Photograph to Corbis.

28. Upon information and belief at some time after May 2002 Corbis made the Photograph commercially available to third parties through its web site as item number DWF15-241109.

29. Corbis' commercial exploitation of the Photograph was without the permission of and was not authorized by Bloodrose.

30. As of the date of this first amended complaint Corbis is still offering the Photograph to third parties through its web site as item number DWF15-241109. Corbis' offering of the Photograph is still without Bloodrose's permission.

31. At some time after May 2002, upon information and belief Converse discovered the Photograph on Corbis' web site.

32. Upon information and belief on or about June 29, 2005, Corbis and Converse entered into a license agreement whereby Corbis licensed the Photograph to Converse for Converse's use of the image of the Tattoo on up to 25,000 units of apparel between June 1, 2006 and December 1, 2006.

33. Upon information and belief in consideration of the license Converse paid Corbis $1,145.00.

34. Upon information and belief Converse used the image of the Tattoo in connection with Converse's Chuck Taylor line of footwear.

35. Converse manufactured directly or had manufactured at its direction many thousand pairs of footwear incorporating a portion of the image of the Tattoo (the "Infringing Shoes").

36. Some of the Infringing Shoes were assigned the stock keeping unit ("SKU") number AV422.

37. Some of the Infringing Shoes were assigned the SKU number 1V422.

38. Some of the Infringing Shoes were assigned the SKU number AV391.

39. Some of the Infringing Shoes were assigned the SKU number 1V391.

40. The portion of the image of the Tattoo used by Converse for the Infringing Shoes is an exact copy of the Tattoo.

41. Attached hereto as Exhibit C is a color photocopy of an Infringing Shoe.

42. Upon information and belief Converse has sold thousands of pairs of the Infringing Shoes to retailers in the United States including retailers who conduct business in the State of New York and within this district.

43. Kinway is one such retailer who purchased Infringing Shoes from Converse and sold them within the State of New York and within this district.

44. Upon information and belief Converse has sold thousands of pairs of the Infringing Shoes to retailers outside the United States.

## AS AND FOR A FIRST CLAIM
## VIOLATION OF THE COPYRIGHT ACT

45. Bloodrose repeats and realleges each and every allegation set forth in paragraphs 1 through 44 of this First Amended Complaint as fully and completely as if set forth herein.

46. Corbis' display of the Photograph on its web site constituted (and continues to constitute) a public display of the Tattoo.

47. Corbis' display of the Photograph on its web violated (and continues to violate) Bloodrose's exclusive rights in that Tattoo as provided under §106 of the Copyright Act.

48. Corbis' licensing of the Photograph to Converse violated Bloodrose's exclusive rights in that Tattoo as provided under §106 of the Copyright Act.

49. Upon information and belief Corbis had full knowledge of Bloodrose's rights or at least acted in disregard of Bloodrose's rights, and thereby willfully infringed Bloodrose's copyright interests in the Tattoo by displaying, offering to license, and licensing the Photograph without Bloodrose's consent.

1014328.1

50. The acts of Corbis have damaged Bloodrose in an amount as yet unknown and may further damage Bloodrose in such a manner that Bloodrose has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM
## VIOLATION OF THE COPYRIGHT ACT

51. Bloodrose repeats and realleges each and every allegation set forth in paragraphs 1 through 44 and 46 through 50 of this First Amended Complaint as fully and completely as if set forth herein.

52. Converse purchased or manufactured thousands of pairs of the Infringing Shoes.

53. Converse sold thousands of the Infringing Shoes to retailers in the United States.

54. Converse's use of the Tattoo was without Bloodrose's knowledge or permission.

55. Upon information and belief, at some time presently unknown but after May 2002, Converse delivered the Infringing Shoes to its customers including, but not limited to, Kinway.

56. Upon information and belief, at some time presently unknown but after May 2002, Converse's retail customers including Kinway, through their retail stores and retail web sites, offered for sale and sold the Infringing Shoes in this district and elsewhere in the United States.

57. Upon information and belief Converse, having full knowledge of Bloodrose's rights or at least acting in disregard of Bloodrose's rights, willfully infringed Bloodrose's copyright interests in the Tattoo by manufacturing, importing, distributing, selling, offering for sale, promoting and/or advertising the Infringing Shoes without Bloodrose's consent.

58. All of the above described activities are in violation of Bloodrose's rights under the Copyright Act.

59. The acts of the Defendants have damaged Bloodrose in an amount as yet unknown and may further damage Bloodrose in such a manner that Bloodrose has no adequate remedy at law.

## AS AND FOR A THIRD CLAIM
## VIOLATION OF THE COPYRIGHT ACT

60. Bloodrose repeats and realleges each and every allegation set forth in paragraphs 1 through 44, 46 through 50 and 52 through 59 of this First Amended Complaint as fully and completely as if set forth herein.

61. Corbis' licensing of the Photograph to Converse occurred within the United States.

62. Corbis' licensing of the Photograph to Converse infringed Bloodrose's copyright rights in the Tattoo.

63. Corbis' licensing of the Photograph to Converse was intended to permit Converse to manufacture up to 25,000 pairs of the Infringing Shoes.

64. Upon information and belief Converse manufactured the Infringing Shoes or had the Infringing Shoes manufactured outside the United States.

65. Corbis' licensing of the Photograph to Converse was an infringing act that occurred within the United States.

66. Corbis' licensing of the Photograph to Converse gave rise to Converse's manufacturing of thousands of pairs of the Infringing Shoes outside the United States.

67. Corbis' licensing of the Photograph to Converse was a predicate infringing act within the United States that gave rise to Converse's sales of thousands of pairs of the Infringing Shoes outside the United States.

68. The predicate copyright infringement of the Tattoo within the United States gives rise to a constructive trust in favor of Bloodrose for damages occurring outside the United States.

69. This Court has jurisdiction over the extraterritorial copyright infringement by virtue of the predicate infringing act which occurred within the United States.

1014328.1

70. Converse sold thousands of pairs of the Infringing Shoes to retailers outside of the United States.

71. The acts of the Corbis and Converse have damaged Bloodrose in an amount as yet unknown and may further damage Bloodrose in such a manner that Bloodrose has no adequate remedy at law.

**AS AND FOR A FOURTH CLAIM
UNFAIR COMPETITION**

72. Bloodrose repeats and realleges each and every allegation set forth in paragraphs 1 through 44, 46 through 50, 52 through 59 and 61 through 71 of this First Amended Complaint as fully and completely as if set forth herein.

73. Bloodrose went to great expense and effort in creating the Tattoo and building a business based upon original, highly stylized and individually designed one-of-a-kind tattoos.

74. As a result of expenditure of money and skill in the development and promotion of tattoos, including the Tattoo, Bloodrose has developed significant customer loyalty and good will.

75. Corbis and Converse, by their acts, have taken advantage of the knowledge and skill of Bloodrose, and of the good will developed by Bloodrose, and have capitalized upon the market created by Bloodrose for its tattoos.

76. The aforesaid acts of Corbis in displaying the Photograph on its web site, licensing the Photograph to Converse and offering and continuing to offer the Photograph to others for sale or license constitutes inequitable conduct, unfair trade practices and unfair competition, and are likely to deceive and confuse Bloodrose's customers into believing that the Photograph is sponsored by, licensed by, endorsed by or are otherwise associated with Bloodrose.

77. The aforesaid acts of Converse in manufacturing, distributing, offering for sale and selling and/or causing to be manufactured, distributed, offered for sale and/or sold, the Infringing Shoes, constitute inequitable conduct, unfair trade practices and unfair competition, and are likely to deceive and confuse Bloodrose's customers into believing that the Infringing Shoes are sponsored by, licensed by, endorsed by or are otherwise associated with Bloodrose.

78. Corbis' and Converse's acts constitute misappropriation of Bloodrose's copyrighted Tattoo and the good will and reputation which are associated therewith.

79. Corbis and Converse have misappropriated Bloodrose's good will and the benefits of Bloodrose's skill and expenditures in the development of the Tattoo and by reason thereof has caused irreparable injury to Bloodrose.

80. Bloodrose's customers who have come to Bloodrose for one-of-a-kind tattoos with the expectation that the tattoos will not be copied or otherwise commercially exploited have now discovered that the Tattoo has been mass-marketed by Corbis and Converse. This has and will continue to injure Bloodrose as long as any of the Defendants continue to display and offer for sale or license the Photograph or to manufacture, distribute, offer to sell and/or sell and/or cause to be manufactured, distributed, offered for sale and sold, the Infringing Shoes.

81. Corbis has advertised, promoted, licensed and/or sold the Photograph without authorization, license or permission from Bloodrose.

82. Converse and Kinway have manufactured, advertised, promoted, distributed and/or sold the Infringing Shoes without authorization, license or permission from Bloodrose.

83. Defendants' acts have damaged Bloodrose in an amount as yet unknown and may further damage Bloodrose in such a manner that Bloodrose has no adequate remedy at law.

## JURY DEMAND

84. Bloodrose demands trial by jury on all claims and issues.

**WHEREFORE**, Bloodrose Enterprises, Inc., respectfully requests as follows:

(a)   That Corbis, and any other of Corbis' customers who licensed, purchased, or otherwise obtained the Photograph their officers, representatives, agents, servants and all parties in privity with Corbis be permanently enjoined from infringing the copyrighted Tattoo as covered by United States Copyright, Registration No. VA 1-401-596 in any manner, including but not limited to, the display, offering for license, licensing, promoting or advertising the Photograph embodying the copyrighted Tattoo or portion thereof, or any design or image substantially similar thereto;

(b)   that the Converse and Kinway, and any other of Converse s customers who purchased the Infringing Shoes, their officers, representatives, agents, servants and all parties in privity with Converse be permanently enjoined from infringing the copyrighted Tattoo as covered by United States Copyright, Registration No. VA 1-401-596 in any manner, including but not limited to, manufacturing, distributing, selling, offering for sale, promoting or advertising any footwear or apparel item embodying the copyrighted Tattoo or portion thereof, or any design substantially similar thereto, or by causing and/or participating in such manufacturing, distributing, selling, offering for sale or promoting any such items;

(c)   that Converse and Kinway, and any other of Converse's customers who purchased the Infringing Shoes be required to deliver up for destruction all products in their possession or under their control infringing the copyrighted Tattoo or portion thereof;

(d)   that Corbis be required to pay to Bloodrose such damages as have been sustained in consequence of Corbis' infringement of the copyrighted Tattoo and to account for all gains, profits and advantages derived by Corbis from its infringement of the copyrighted Tattoo or

portion thereof, or such damages as to the Court shall appear proper within the provisions of the Copyright Act;

(e) that Converse and Kinway, and any other of Converse's customers who purchased the Infringing Shoes be required to pay to Bloodrose such damages as have been sustained in consequence of their infringement of the copyrighted Tattoo and to account for all gains, profits and advantages derived by the Defendants, and any other of Converse's customers who purchased the Infringing Shoes from their infringement of the copyrighted Tattoo or portion thereof, or such damages as to the Court shall appear proper within the provisions of the Copyright Act;

(f) that the Defendants be required to pay to Bloodrose such damages as have been sustained in consequence of their misappropriation of Bloodrose's Tattoo and the good will and reputation which are associated therewith; and

(g) that Bloodrose be entitled to such other and further relief as the Court may deem just and equitable under the circumstances.

Dated: New York, New York
August 7, 2007

                PHILLIPS NIZER LLP

                By: s/ Michael S. Fischman
                Michael S. Fischman (MF 7245)
                Jeremy D. Richardson (JR 7706)
                Attorneys for Plaintiff
                666 Fifth Avenue
                New York, New York 10103-0084
                (212) 977-9700

1014328.1